**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**PADUCAH DIVISION**
**CIVIL ACTION NO. 5:20-cv-00189-LLK**

**LACI JO ARINGTON GIBSON**                                                          **PLAINTIFF**

**v.**

**KILOLO KIJAKAZI, Acting Commissioner of Social Security**                  **DEFENDANT**

<u>**MEMORANDUM OPINION AND ORDER**</u>

This matter is before the Court on Plaintiff's complaint seeking judicial review, pursuant to 42

U.S.C. § 405(g), of the final decision of the Commissioner denying her claim for Disability Insurance

Benefits (DIB) and Hospital Insurance Benefits (Medicate Part A).

The fact and law summaries of Plaintiff and the Commissioner are at Doc. 16 and Doc. 22.  The

parties have consented to the jurisdiction of the undersigned Magistrate Judge to determine this case,

with any appeal lying before the Sixth Circuit Court of Appeals.  [Doc. 14].

Plaintiff alleges that she became disabled on February 5, 2014.  Administrative Record (AR), Doc.

13 at 11.[1]  On September 30, 2014, she was last insured for DIB, and, on June 30, 2015, she was last insured

for Hospital Insurance Benefits.  *Id.* at 11-12.

On September 25, 2020, the Appeals Council issued the Commissioner's final decision, denying

Plaintiff's claims for DIB and Hospital Insurance Benefits, finding that Plaintiff was not under a disability

as defined in the Social Security Act through June 30, 2015.  *Id.* at 13.

Plaintiff makes two arguments.  Because the arguments are persuasive and the Commissioner's

final decision is not supported by substantial evidence, the Court will REMAND this matter to the

Commissioner for a new decision.

**Plaintiff's medical impairments**

---

[1] This Opinion, as a numbering system, utilizes the page numbers appearing at the bottom, right-hand side of each page of the administrative record.

Plaintiff suffers from Ehlers-Danlos syndrome (EDS) and Postural Orthostatic Tachycardia Syndrome (POTS).  [Doc. 13 at 12].

EDS is a group of disorders that affect connective tissues supporting the skin, bones, blood vessels, and many other organs and tissues.  *Drabczyk v. Comm'r of Soc. Sec.*, No. 18-CV-355-FPG, 2020 WL 4390701, at *2 (W.D.N.Y. July 31, 2020) (citing https://ghr.nlm.nih.gov/condition/ehlers-danlos-syndrome).  Defects in connective tissues cause the signs and symptoms of these conditions, which range from mildly loose joints to life-threatening complications.  *Id.*  The syndrome is associated with unusually loose unstable joints that are prone to dislocation and chronic pain, abnormal scarring, highly stretchy and fragile skin, bleeding caused by unpredictable tearing of blood vessels and organs, and problems with the movement of blood and breathing.  *Id.*

POTS is a condition that affects circulation of blood, which is associated with the development of symptoms that occur when standing up from a reclining position and that may be relieved by sitting or lying back down.  *Id.* (citing https://my.clevelandclinic.org/health/diseases/16560-postural-orthostatic-tachycardia-syndrome-pots).   The primary symptom of POTS is lightheadedness, fainting, and an uncomfortable, rapid increase in heartbeat, as well as chest pain, exhaustion, high/low blood pressure, nausea, blurred vision, diarrhea, forgetfulness, headaches, and many others.  *Id.*

**The Commissioner's evaluation of Plaintiff's statements is not supported by substantial evidence.**

First, Plaintiff argues that the Commissioner's evaluation of her statements concerning the limiting effects of her pain and other subjective symptoms is not supported by substantial evidence.  [Doc. 16 at PageID.1412-13, 1427-28].

A claimant who suffers from EDS is analogous to one who suffers from fibromyalgia, which is a "complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months."  *Coffee v. Comm'r*, No. 3:17-CV-852-PPS/MGG, 2019 WL 302680, at *3 (N.D. Ind. Jan. 22, 2019) (quoting Social Security Ruling (SSR) 12-2p,

2012 WL 3017612, at *1).   As the Sixth Circuit has noted, "given the nature of fibromyalgia, where subjective pain complaints play an important role in the diagnosis and treatment of the condition, providing justification for discounting a claimant's statements is particularly important."   *Id.* (quoting *Rogers v. Comm'r*, 486 F.3d 234, 248 (6th Cir. 2007)).   This type of analysis would seem to apply to EDS as well, where laboratory, x-ray, or physical findings might not necessarily indicate the level of pain and other subjective symptoms suffered.   *Id.*   In fibromyalgia and EDS cases, it is often inappropriate for the Commissioner to rest his pain-credibility analysis too heavily on an absence of objective support for a claimant's complaints "without digging more deeply."   *Id.* (quoting *Pierce v. Comm'r*, 739 F.3d 1046, 1050 (7th Cir. 2014)).

Even if special rules for evaluating statements concerning limiting effects of subjective symptoms do not apply in EDS cases, the general rules caution that "we [the Commissioner] will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual."   SSR 16-3p, 2016 WL 1119029, at *5.   "The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."   *Id.*

The Commissioner's evaluation of Plaintiff's statements neither dug deeply nor contained specific reasons for discounting Plaintiff's testimony of being unable to stand/walk for prolonged periods of time due to POTS.   [Doc. 13 at 81].   Yet the Commissioner found that Plaintiff can perform light work [Doc. 13 at 12], which, by definition, requires 6 hours of standing/walking per 8-hour workday (with sitting during the remaining 2 hours).   SSR 83-10, 1983 WL 31251, at *5-6.

The Appeals Council stated that it "considered the claimant's statements concerning the alleged symptoms and adopts the Administrative Law Judge's [ALJ's] conclusions in that regard."   [Doc. 13 at 11].

The ALJ, in turn, dismissed Plaintiff's reported symptoms prior to September 30, 2014, due to lack of objective support, based on the following bullet points:

> X-ray of the lumbar spine that revealed a normal, or negative, examination (Ex. 1F/6)

> May 25, 2011, objective imaging of the right knee revealing trace effusion, but an otherwise negative examination (Ex. 1F/7)

> Trace laxity of the elbows consisting with hypermobility along with early degenerative change of the right knee (Ex. 1F/8)

> Unremarkable and normal physical examination of the entire body (Exs. 3F/11 and 25)

> Normal physical examination of the right knee and normal physical examination of the left knee with minimal amount of crepitation with age appropriate range of motion (Ex. 6F/5)

> Full range of motion in shoulders, elbows, wrists, and hands with some pain in the shoulders (Ex. 9F/4)

> Full range of motion in the spine, hips, knees, and ankles, with some associated pain (Ex. 9F/4)

*Id.* at 35.  One may suffer from severe, or vocationally significant, EDS symptoms, in the absence of anything objectively remarkable in the radiograph images or on physical examination.  Similarly, the ALJ discounted Plaintiff's POTS symptoms, in part, because "[o]bjective imaging from that time revealed no active cardiopulmonary disease and her cardiovascular examinations were normal (Exs. 5F and 11F)."  *Id.* at 36.  One may suffer from severe POTS symptoms without having cardiopulmonary disease or an abnormal cardiovascular examination.

**The Commissioner's weighing of the medical opinions is not supported by substantial evidence.**

Second, Plaintiff argues that the Commissioner's weighing of the medical opinions of her treating physician is not supported by substantial evidence.  [Doc. 16 at PageID.1413-15, 1419-25, 1429].

Jennifer W. Nelson, D.O. [Doctor of Osteopathic Medicine], began treating Plaintiff on May 6, 2014 (before September 30, 2014, when her insured status for DIB expired).  [Doc. 13 at 144].  In September 2020, Dr. Nelson provided a detailed narrative statement of Plaintiff's medical conditions and their impact on her ability to engage in work-like activities.  *Id.* at 140-44.  Dr. Nelson concluded as follows:

It is my professional opinion that Mrs. Gibson is disabled and unable to perform any meaningful employment, including sedentary work.  Mrs. Gibson exhibited this disability on her first visit to my office on 05/06/2014.  Based on a review of her previous medical history and her symptoms at that time, it is also my opinion that Mrs. Gibson was disabled on 02/05/2014 [when she alleges that she became disabled].  Mrs. Gibson's medical conditions have kept her unable to work for more than six years, and conditions are expected to last well beyond the twelve-month mark in the future, likely lifelong.

*Id.* at 144.

Plaintiff filed her application for DIB on December 18, 2015.  *Id.* at 11.  "For claims filed before March 27, 2017, the rules in § 404.1527 [i.e., the rules for weighing medical opinions] apply."  20 C.F.R. § 404.1520c.  Section 404.1527 provides, in part, that "[r]egardless of its source, we [the Commissioner] will evaluate every medical opinion we receive."  20 C.F.R. § 404.1527(c).  There is no indication the Commissioner evaluated (or even saw) Dr. Nelson's September 2020 medical opinion.

In September 2018, Dr. Nelson completed the Medical Source Statement About What the Claimant Can Still Do Despite Impairment(s).  [Doc. 13 at 546].  Dr. Nelson certified that Plaintiff's "condition existed and persisted with the restrictions as outlined in this Medical Source Statement at least since March 5, 2014" as Plaintiff's "conditions are genetic and presence since birth.  They have worsened with age."  *Id.*  The ALJ gave "no weight" to Dr. Nelson's September 2018 medical opinion because:

Dr. Nelson provided very little treatment to the claimant prior to the date last insured.  Dr. Nelson's opinion is inconsistent with, and not supported by, her own treatment notes, which are unremarkable.  Therefore, the undersigned gives this opinion no weight.

*Id.* at 37.

As indicated above, Plaintiff alleges that she became disabled on February 5, 2014, Dr. Nelson began treating her on May 6, 2014, and she was last insured for DIB on September 30, 2014.  *Id.* at 11, 144.  Regardless of whether Dr. Nelson treated Plaintiff a lot or a "little" prior to September 30, 2014, Dr. Nelson was qualified to opine that Plaintiff suffers from a "genetic condition" (EDS) that had worsened to the degree outlined in her Medical Source Statement on or before September 30, 2014.  In other words,

the ALJ did not give good reasons for discounting Dr. Nelson's medical opinion regarding what Plaintiff can still do despite her impairments.

The rules for weighing treating source medical opinions, which apply in the present case, provide as follows:

> (2) Treatment relationship. Generally, we give more weight to medical opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's medical opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the medical opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion.

20 C.F.R. § 404.1527(c)(2).

This latter requirement of giving "good reasons" exists, in part, to let "claimants understand the disposition of their cases, particularly in situations where a claimant knows" that her physician believes she has a certain restriction and "therefore might be especially bewildered when told by an administrative bureaucracy that" she has no such restriction. *Cole v. Comm'r*, 661 F.3d 931, 937-38 (6th Cir. 2011). Where, as in the present case, the Commissioner fails to identify "good reasons" for discounting a treating physician's medical opinion, this "denotes a lack of substantial evidence, even where the conclusion of the [Commissioner] may be justified based upon the record." *Rogers v. Comm'r*, 486 F.3d 234, 243 (6th Cir. 2007).

In October 2015, Dr. Nelson completed the Physical Residual Functional Capacity Assessment. [Doc. 13 at 1165-72]. Among other things, Dr. Nelson found that Plaintiff cannot stand/walk any significant amount of time during an 8-hour workday and can sit for no more than 2 hours during an 8-hour workday due to POTS symptoms. *Id.* at 1166.

6

The ALJ gave "no weight" to Dr. Nelson's October 2015 medical opinion because:

> Dr. Nelson provided very little treatment to the claimant prior to the date last insured. Dr. Nelson's opinion is inconsistent with her own treatment notes, which are unremarkable. Additionally, Dr. Nelson's opinion is not supported by the overall medical evidence of record, including the claimant's own testimony that she can stand and walk during an 8-hour workday. Therefore, the undersigned gives this opinion no weight.

*Id.* at 37. These were not "good reasons," 20 C.F.R. § 404.1527(c), for discounting Dr. Nelson's medical opinion. As indicated above, Dr. Nelson was qualified to opine as to Plaintiff's limitations prior to her date last insured for DIB, and, due to the nature of EDS, it would not be unusual for Plaintiff to experience severe EDS symptoms despite a relative lack of supporting objective medical evidence.

Like Plaintiff, the plaintiff in *Iskra v. Commissioner* suffered from EDS and POTS. *Iskra v. Comm'r,* No. 1:19-CV-973, 2021 WL 1111332, at *2 (W.D. Mich. Feb. 18, 2021) (report rejected on other grounds). Iskra's treating physician opined that Iskra cannot stay in any position for long periods of time without loss of consciousness from POTS. 2021 WL 1107272, at *1. The ALJ gave this opinion "little weight," in part, due to "unremarkable" treatment notes and lack of "documentation." *Id.* The court found that the ALJ failed to give "good reasons" for discounting the treating physician's opinion:

> … Dr. Jayasuriya's [the treating physician's] observations of Iskra during the physical examination— she appeared comfortable and did not complain about pain or muscle weakness— is not inconsistent with the conclusion that Iskra cannot sit for long periods of time without a loss of consciousness because of POTS. To the extent that the ALJ broadly concludes that Dr. Jayasuriya's conclusion is not consistent with the medical record as a whole, the ALJ did not identify any particular inconsistencies, at least in this portion of the decision. … When a court finds that the ALJ did not provide good reasons for rejecting a treating physician's opinion, remand is the appropriate result. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004).

*Id.* at *2. For similar reasons, the Commissioner failed to give "good reasons" for discounting Dr. Nelson's medical opinion.

**The appropriate remedy is a remand for a new decision.**

When (as here) substantial evidence does not support the Commissioner's final decision, the Court must determine whether the appropriate remedy is a remand for a new decision or a judicial award of benefits. A judicial award is proper only where the "proof of disability is overwhelming or where the

proof of disability is strong and evidence to the contrary is lacking." *Earley v. Comm'r*, 893 F.3d 929, 934-35 (6th Cir. 2018).

Here, evidence of disability is not overwhelming.  Given another opportunity, the Commissioner may yet:  1) Identify good reasons for discounting Plaintiff's statements concerning the limiting effects of subjective symptoms; 2) "Consider," 20 C.F.R. § 404.1527(c), Dr. Nelson's September 2020 opinion; and 3) Identify "good reasons," 20 C.F.R. § 404.1527(c), for the weight assigned to Dr. Nelson's September 2018 and October 2015 opinions.

**Order**

Therefore, this matter is hereby REMANDED to the Commissioner for a new decision and any further administrative proceedings deemed necessary and appropriate by the Commissioner.

December 8, 2021

**Lanny King, Magistrate Judge**
**United States District Court**